# In the United States Court of Federal Claims

No. 21-2113T

(Filed: August 24, 2023)

|  | ) |
| --- | --- |
| **JEFFREY HALL and KRISTIN HALL,** | ) |
|  | ) |
| *Plaintiffs*, | ) |
|  | ) |
| v. | ) |
|  | ) |
| **THE UNITED STATES,** | ) |
|  | ) |
| *Defendant*. | ) |
|  | ) |

## ORDER

The parties in this case are engaged in fact discovery, which the Court has extended to November 13, 2023.  *See* July 25, 2023, Minute Order (extending the scheduling order at ECF No. 12).  In response to Defendant's timely request for production, Plaintiffs filed a motion for a protective order, but only after the deadline for discovery responses had passed.  ECF Nos. 26, 26-3.  As discussed below, Plaintiffs' motion is procedurally defective and fails to provide a basis for a protective order.  The Court denies Plaintiffs' motion.

### I.  FACTUAL BACKGROUND

On October 29, 2021, Plaintiffs, Jeffrey and Kristin Hall, filed their tax refund complaint in this Court against Defendant, the United States.  ECF No. 1.  The complaint concerned "accounting mistakes" that led Plaintiffs to file additional or corrected tax forms for 2010–2015.  *Id.* at 2.  On June 14, 2022, the Court issued a scheduling order that set deadlines for discovery.  ECF No. 12.  In the following several months, Plaintiffs shared "hundreds of pages of documentation."  ECF No. 26 ("Pl. Mot.") at 3; *see* ECF No. 27 ("Def. Resp.") at 1.  This included redacted financial account statements that, according to Plaintiffs, hid "personal and private transactions having nothing whatsoever to do with this case."  Pl. Mot. at 3.  The government argues these statements "have been so heavily redacted that they are nearly useless."  Def. Resp. at 2 (citing ECF No. 27-1 at 1–2, which show two examples of account statements where Plaintiffs redacted the entire page except for a single transaction).

On March 9, 2023, the government filed two motions: a motion to extend the discovery schedule and a motion to amend its answer. ECF Nos. 20–21. That day, the Court granted the motion to extend discovery. March 9, 2023, Minute Order. Plaintiffs had through March 23, 2023, to respond to the government's motion to amend and filed no timely response. *See* ECF No. 21 (docket text identifying the deadline); *see* Rule 7.2(a)(1) of the Rules of the United States Court of Federal Claims ("RCFC") ("Unless otherwise provided in these rules or by order of the court, a response or an objection to a written motion must be filed within 14 days after service of the motion."). On March 27, 2023, the Court granted the government's motion to amend its answer. ECF No. 22. The government filed its amended answer on March 28, 2023. ECF No. 23. The revised answer added an additional defense: the government avers Plaintiffs' potential recovery "must be reduced" to account for the "expenses from renting" one property and the liability from "the sale of the Topaz Street property." *Id.* ¶¶ 33–34.

Also on March 27, 2023, the government served Plaintiffs with its "Second Set of Requests for Production of Documents." ECF No. 26-1 (filed by Plaintiffs as an attachment to the motion at issue in this order). There, and consistent with this Court's Rules, the government indicated that "responses are to be served within 30 days of receipt of these [discovery] requests unless another date is agreed to by the undersigned counsel." *Id.* at 1; *see* RCFC 34(b)(2)(A) ("The party to whom the request is directed must respond in writing within 30 days after being served . . . . A shorter or longer time may be stipulated to[.]").

In the government's second request for production of documents, the government sought "[a]ll Financial Account Statements for any period in, or in any way overlapping, the above-specified time period." *Id.* at 4. Other parts of the document defined "Financial Account Statements" and the relevant time period. *Id.* at 3 (defining "Financial Account Statements" as "all periodic reports (including monthly and annual) and attachments thereto, issued with respect to the financial transactions of, or activity in, a financial account"); *id.* (defining "Financial Account"); *id.* at 4 (defining the time period as January 1, 2010, through December 31, 2015). Defendant's document request also specified that "[d]ocuments are to be provided without redactions of any kind." *Id.* at 2 (citing *Bartholomew v. Avalon Cap. Grp., Inc.*, 278 F.R.D. 441, 451 (D. Minn. 2011)).

Upon receiving the document request on March 27, 2023, Plaintiffs' counsel contacted the government's counsel by phone and communicated the document request "was terribly overbroad, burdensome, and redundant." Pl. Mot. at 2; *see* Def. Resp. at 2; ECF No. 28 ("Pl. Rep.")[1] at 6–7. The next documented discovery-related communication

---

[1] The Court notes that Plaintiffs' reply brief, ECF No. 28, appears to use a font size around 10 or 11 point. *See* Pl. Rep. "All papers filed with the clerk must conform" with certain formatting requirements, RCFC 5.5(a), and these requirements include that "[t]he type size for text and footnotes must be no smaller than 12 point," RCFC 5.5(c)(2).

occurred on April 28, 2023 — after the thirty-day deadline for discovery responses had passed.  Pl. Mot. at 3–4; Def. Resp. at 2–3.  On that date, the government asked Plaintiffs via email about the pending request.  Pl. Mot. at 3–4; Def. Resp. at 2–3; Pl. Rep. at 6–7.

On Monday, May 1, 2023, Plaintiffs filed a motion for a protective order pursuant to RCFC 26(c)(1), RCFC 5.2(e), RCFC 26(b)(2)(B), "and/or" RCFC 26(b)(2)(C).  ECF No. 24 at 1.  There, Plaintiffs argue the government's document request "is not only disproportionate but wholly redundant and would incur unnecessary 'annoyance, embarrassment, oppression . . . undue burden' and 'expense.'"  *Id.* at 7–8 (alteration in original) (quoting *Lakeland Partners, L.L.C. v. United States*, 88 Fed. Cl. 124, 132 (2009)).  On May 7, 2023, Plaintiffs filed a motion for leave to correct their protective order motion, ECF No. 25, which the Court granted the following day, *see* May 8, 2023, Minute Order; Pl. Mot. (corrected version with the same arguments).  On May 10, 2023, the government filed its timely response brief.  *See* Def. Resp.  In its response, the government requested the Court deny Plaintiffs' motion, award the government motion-related fees, and extend discovery.  Def. Resp. at 9.  On May 17, 2023, Plaintiffs filed their timely reply brief.  *See* Pl. Rep.

## II.     LEGAL BACKGROUND AND STANDARD OF REVIEW

The decision to grant or deny a motion for a protective order (or a discovery request) is within this Court's discretion.  *See, e.g.*, *Harris v. United States*, 868 F.3d 1376, 1378 (Fed. Cir. 2017) (per curiam) (citing *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1342 (Fed. Cir. 2008)).[2]  The Court's decision, in that regard, is guided by this Court's Rules.

Pursuant to RCFC 34:

> A party may serve on any other party a request within the scope of RCFC 26(b) . . . to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession,

---

[2] *See also Forest Prods. Nw., Inc. v. United States*, 453 F.3d 1355, 1359 (Fed. Cir. 2006) ("We review discovery matters for an abuse of discretion." (citing *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1319 (Fed. Cir. 2005))); *id.* at 1359 n.1 ("The Rules of the Court of Federal Claims address protective orders only in the context of discovery." (citing RCFC 26, 26(c))); *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993) ("Discovery rulings are subject to the abuse of discretion standard of review." (citing cases)); *3rd Eye Surveillance, LLC v. United States*, 154 Fed. Cl. 475, 479 (2021) ("'The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders,' which includes 'broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required.'" (alteration in original) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984))).

>       custody, or control: . . . *any designated documents or*
>       *electronically stored information* . . . stored in any medium from
>       which information can be obtained[.]

RCFC 34(a)(1)(A) (emphasis added).  Rule 26(b), which Rule 34(a) cites, pertains to discovery's scope and limits.  In general, discovery's scope covers "*any* nonprivileged matter that is *relevant to any party's claim or defense* and *proportional* to the needs of the case, considering [a variety of factors, including] . . . whether the burden or expense of the proposed discovery outweighs its likely benefit."  RCFC 26(b)(1) (emphases added) (explicitly not limiting discovery to what is admissible in evidence).

Relevant to the present dispute, "[t]he party to whom [a document] request is directed must respond *in writing* within 30 days after being served" absent a stipulation or court order.  RCFC 34(b)(2)(A) (emphasis added).  Such a response "*must* either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons."  RCFC 34(b)(2)(B) (emphasis added).  A responding party "may state that it will produce copies of documents or of electronically stored information instead of permitting inspection" but must then produce those copies "no later than the time . . . specified in the request[.]"  *Id.*

The Court's Rules also govern *how* a party must produce documents in response to a discovery request: if the request does not give categories for organizing and labeling documents, documents "must" be produced "as they are kept in the usual course of business."  RCFC 34(b)(2)(E)(i); *see also* RCFC 34(b)(2)(E)(ii) (requiring a party to produce electronically stored information "in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms").  As the federal district court in the District of Minnesota has persuasively explained in the context of the Federal Rules of Civil Procedure ("FRCP"),[3] "a party seeking the power to unilaterally redact documents for relevance *should request leave* to redact those portions that the party contends are irrelevant."  *Bartholomew*, 278 F.R.D. at 451–52 (emphasis added).

Plaintiffs cite four Rules of this Court, *but without any elaboration*, in support of their motion for a protective order: RCFC 26(c)(1), RCFC 5.2(e), RCFC 26(b)(2)(B), and RCFC 26(b)(2)(C).  Pl. Mot. at 1; *but see* ECF No. 26-3 (Plaintiffs' proposed protective order, which cites only RCFC 26(c)(1) and RCFC 5.2(e)).

---

[3] "[I]nterpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure."  RCFC 2002 Rules Committee Note; *see Kan. City Power & Light Co. v. United States*, 132 Fed. Cl. 28, 32 n.1 (2017) (quoting the same); Rules Committee Notes on RCFC 34, 2016 Amendment (noting the latest RCFC 34 changes to match "the corresponding changes" in FRCP 34).

4

The Court addresses each Rule in turn.

Of Plaintiffs' four cited Rules, RCFC 26(c)(1) is the most particular to this case's procedural posture. Rule 26(c)(1), part of Rule 26's "General Provisions Governing Discovery," allows a party to move for a protective order. RCFC 26(c)(1). Such a motion "*must* include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." *Id.* (emphasis added). Once a party files a motion for a protective order, "[t]he court may, *for good cause*, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of" several remedies. *Id.* (emphasis added); *cf.* RCFC 26(b)(1) (listing the "burden or expense of the proposed discovery" as a proportionality factor). The party seeking a protective order has the burden of demonstrating "good cause." *See Lakeland Partners, L.L.C.*, 88 Fed. Cl. at 133 (2009) (citing Court of Federal Claims and Federal Circuit cases, as well as secondary sources). Thus, attorney argument alone, such as unsubstantiated conclusory statements, does not substitute for evidence supporting an RCFC 26(c) protective order. *See* 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2035, Westlaw (database updated Apr. 2023) ("The courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause.").

If the Court denies a Rule 26(c)(1) motion for a protective order, it "may, on just terms, order that any party or person provide or permit discovery." RCFC 26(c)(2). Rule 26 further provides that "RCFC 37(a)(5) applies to the award of expenses." RCFC 26(c)(3). RCFC 37(a)(5), in turn, instructs that "the court *must*, after giving an opportunity to be heard, require" the nonprevailing party to pay the prevailing party's motion-related expenses. RCFC 37(a)(5)(A)–(C) (providing only limited exceptions this Court finds not relevant here).

The second Rule Plaintiffs cite, RCFC 5.2(e), has nothing to do with discovery responses. Instead, RCFC 5.2 covers "Privacy Protections For Filings Made with the Court." As its title suggests, RCFC 5.2 primarily concerns personal identifiers in court filings, such as Social Security numbers and birth dates, *see* RCFC 5.2(a), (h). While the Rule also provides that "[f]or *good cause*, the court may . . . require redaction of additional information," RCFC 5.2(e) (emphasis added), this Rule does not apply to discovery responses but, as noted, to court filings. Nevertheless, the Court generously reads Plaintiff's reference to this Rule to express a generalized concern with the government's filing publicly accessible documents with personal identifiers or other sensitive information. *Cf.* RCFC App. E ¶ 28(b)–(d) (privacy considerations for the Court's electronic filing system). In any event, RCFC 5.2(e) cannot support a request for a protective order that would exempt Plaintiffs from complying with a proper discovery request, and this Court does not address RCFC 5.2(e) further.

The next Rule Plaintiffs invoke, RCFC 26(b)(2)(C), describes when the Court *must*, with or without a motion, limit the frequency or extent of discovery. RCFC 26(b)(2)(C). This includes when "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." RCFC 26(b)(2)(C)(i). Additionally, the Court must preclude "proposed discovery [that] is outside the scope permitted" by RCFC 26(b). RCFC 26(b)(2)(C)(iii) (citing RCFC 26(b)(1)); *see* RCFC 26(b)(1) ("[P]arties may obtain discovery regarding any nonprivileged matter that is relevant . . . and proportional[.]").

Finally, RCFC 26(b)(2)(B) is specific to discovery of electronically stored information ("ESI"). RCFC 26(b)(2)(B). For such records:

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought *must show* that the information is not reasonably accessible *because of undue burden or cost*.

RCFC 26(b)(2)(B) (emphases added). Plaintiffs' motion does not establish which (if any) financial account statements qualify as ESI. To the extent Plaintiffs' statements are not ESI, Rule 26(b)(2)(B) does not apply. The Court assumes for the purpose of this order that all of these statements *may* qualify as ESI. *See* ECF No. 27-1 at 1–2 (documents Plaintiffs produced that appear to have been digitized for redaction). The question of whether Plaintiffs have shown "undue burden or cost" and, thus, inaccessibility pursuant to Rule 26(b)(2)(B) parallels other Rules that require the Court to consider the proportionality of a discovery request. *See* RCFC 26(b)(1) (describing the "burden or expense" of discovery as one gauge of its proportionality).

## III.   DISCUSSION

### A. Plaintiffs' Motion Is Procedurally Defective

As a matter of procedure alone, there are at least three reasons to deny Plaintiffs' motion.

First, the motion lacks the required certification that the movant met and conferred with the opposing party in good faith. In that regard, RCFC 26 instructs that a party that moves for a protective order "*must* include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." RCFC 26(c)(1) (emphasis added). Plaintiffs' motion describes a March 27, 2023, phone call with Defendant's counsel upon Plaintiffs' receipt

6

of Defendant's request for production. Pl. Mot. 2–4.  But this description does not constitute, or otherwise substitute for, the required certification.[4]  The motion describes no communication between that call and the production deadline.  *See* Pl. Mot. Defendant expected "full, unredacted compliance" on April 28, 2023, Pl. Mot. at 4, which indicates the parties had not conferred about how they each planned to move forward and whether resolution without court action was possible.  Plaintiffs' motion therefore included neither the required certification nor facts the Court could generously read as a certification.

A second procedural defect is that Plaintiffs have put the proverbial cart before the horse in producing redacted documents and only afterwards seeking a protective order.  As the district court in *Bartholomew* explained:

> The [FRCP] explicitly provide when redaction may be used.  *See* Fed. R. Civ. P. 5.2 (discussing redaction within the context of filings with the Court). . . . The [FRCP] also explicitly provide a method for a party to object to a request for production of documents [in Rule 34(b)(2)]. . . . This method for objection does not explicitly include the option of producing redacted documents.

*Bartholomew*, 278 F.R.D. at 451–52.  In the absence of such a protective order permitting redactions, a party "must produce *documents*" — *i.e.*, not snippets or parts of documents — and must produce them "as they are kept in the usual course of business" — *i.e.*, without edits or unilateral redactions.  RCFC 34(b)(2)(E); *see Bartholomew*, 278 F.R.D. at 451–52.

The Court rejects Plaintiffs' tactics here, which would reward an "ask for forgiveness instead of permission" approach to discovery.  The parties' correspondence about discovery has put the onus on the government — the party requesting documents — to flag the parties' disagreement about redaction.  Here, the government did so through its second document request.  That is the opposite of where the burden belongs.  The party's whose documents are sought in discovery is best positioned to explain why redactions are required or appropriate, so *that* party bears the burden to seek a protective order.  The RCFC do not permit engaging in self-help.  *See, e.g.*, RCFC 1; RCFC 26(b) (specifying the default scope of discovery "[u]nless otherwise limited by court order").  At a minimum, Plaintiffs have not pointed to a Rule justifying unilateral redactions.

---

[4] Rule 26's certification requirement applies to a motion itself.  That is, the certification must be contained in the motion and not merely in a reply brief, for example.  Moreover, Plaintiffs characterized the results of the "18 minute[]" March 27, 2023, call as "an agreement to confer again."  Pl. Rep. at 7.  The required meet-and-confer plainly was not finalized.

The untimeliness of Plaintiffs' motion for a protective order provides a third procedural reason to deny Plaintiffs' motion. Even if Plaintiffs told the government over the phone that the document request "was terribly overbroad, burdensome, and redundant," Pl. Mot. at 2, there is no evidence Plaintiffs sent the government a *written* objection or other written response within thirty days of the discovery request, as required by the Court's Rules, *see* RCFC 34(b)(2)(A). Nor did Plaintiffs produce (or offer for inspection) the requested documents by the deadline. *See* Pl. Mot. The undisputed events therefore demonstrate Plaintiffs did not follow any timely path as required by RCFC 34(b)(2). *See* RCFC 34(b)(2)(B). Plaintiffs did not file their motion for a protective order until after the time to respond to Defendant's request for production had passed. *See* Pl. Mot. at 3–4; Def. Resp. at 2–3.

The Rule for discovery-related protective orders does not specify a deadline for a motion for a protective order. *See* RCFC 26(c). But that Rule must be read in conjunction with other discovery Rules, including RCFC 34 and RCFC 37. In that regard, courts may deny a motion for a protective order on the basis of FRCP 26(c) when a movant misses the FRCP 34 deadline for responding to a document request and only then seeks a protective order. *See, e.g.*, *Velasquez v. Frontier Med. Inc.*, 229 F.R.D. 197 (D.N.M. 2005) ("[T]he Tenth Circuit has held that 'a motion under [rule] 26(c) for protection . . . is timely filed if made before the date set for production.'" (alterations in original) (quoting *In re Coordinated Pretrial Proc. in Petroleum Prods. Antitrust Litig.*, 669 F.2d 620, 622 n.2 (10th Cir. 1982))).[5] Furthermore, RCFC 37 provides that a failure to properly respond to a discovery request "is not excused . . . unless the party . . . has a *pending* motion for a protective order under RCFC 26(c)." RCFC 37(d)(2) (emphasis added). Plaintiffs' motion for a protective order was not pending when they missed the deadline to produce the documents or object to the request. Plaintiffs' late filing of its motion for a protective order is therefore yet another reason the Court now denies Plaintiffs' motion.

---

[5] *See also Ayers v. Cont'l Cas. Co.*, 240 F.R.D. 216, 221 (N.D.W.V. 2007) ("There are, however, implicit limitations [in FRCP 26(c)] providing a motion must be timely. Motions for a protective order must be made before or on the date the discovery is due." (citation omitted) (first citing *Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 413 (M.D.N.C. 1991); and then citing *United States v. Int'l Bus. Machs. Corp.*, 70 F.R.D. 700, 701 (S.D.N.Y. 1976))); *Young v. McGill*, 2012 WL 1660680, at *3 (D. Conn. May 11, 2012) ("[T]he defendants did not move for a protective order until . . . after the deadline for responding to the September 2010 discovery requests had elapsed. Thus, the motions for protective order were untimely."); Wright & Miller, *supra*, § 2035 ("Prior to 1970 the protective order rule required that an application for an order be made 'seasonably.' This requirement was not included when the protective order provisions were moved to Rule 26(c), but the courts still consider the timeliness of a motion and look to all of the circumstances in determining whether the motion is timely."); 6 Daniel R. Coquillette et al., *Moore's Federal Practice* ¶ 26.102[2], Lexis (database updated 2023) ("A motion for a protective order is timely if made prior to the date set for producing the discovery.").

### B. Plaintiffs' Motion Fails to Justify a Protective Order

Beyond procedural defects, the Court finds that Plaintiffs have failed to show good cause for a protective order and have otherwise not demonstrated undue burden or expense. The unredacted account statements the government seeks are relevant, at the very least, to the new defense contained in the government's amended answer to Plaintiffs' complaint. That amended answer concerns "expenses from renting part of [Plaintiffs'] residence . . . , which were improperly included on prior returns as losses and/or deductions." *See* ECF No. 23 at 7.[6] Besides the new affirmative defense, the entire case is about the propriety and timing of deductions Plaintiffs may claim. *See, e.g.*, ECF No. 1 at 1–2 (describing the root of Plaintiffs' legal claim as errors "affecting carry forward losses and deductions that they should have been allowed to apply as offsets"); Def. Resp. at 8 ("The issues in this case are the sale date of plaintiffs' Topaz Street property . . . and whether they may deduct expenses for renting out the basement of their own home."). One reason the government served a second request for production was that "[a] previous production revealed [hundreds of thousands of dollars of expenses] among the various deductions plaintiff[s] claim[]." Def. Resp. at 8.

Plaintiffs' account statements are a reasonable place for the government to look for evidence related to Plaintiffs' deductions. The government's latest document request is for unredacted account statements; to the extent Plaintiffs already have produced unredacted documents other than account statements, *see, e.g.*, ECF No. 27-1 at 2 (a store receipt Plaintiffs produced), the government's request requires no duplicative production. In addition, the time period of the government's request, 2010–2015, matches the period of amended tax returns in Plaintiffs' complaint. *Compare* ECF No. 1 at 2–3 (Plaintiffs' complaint describing the amended returns), *with* ECF No. 26-1 at 4 (the government's request for 2010–2015 statements). The unredacted account statements the government requests are therefore plausibly relevant and, if they are readily available, proportional to this case's needs. Absent a compelling argument that the discovery request is somehow disproportionate to the needs of this case, Plaintiffs must produce the requested documents.

Plaintiffs' remaining argument in opposition to the government's discovery has two main branches: (1) the account statements would reveal sensitive information; and (2) the effort to produce the statements would be exorbitantly burdensome.

---

[6] Plaintiffs indicate that the parties had agreed that the above-captioned case depended only on a few questions, none of which pertain to the redacted transactions on account statements. Pl. Mot. at 2–3 (referring to an October 19, 2022, letter from Plaintiffs and the March 27, 2023, phone call); *id.* at 6 ("[W]hy did [the government] not include [the request for unredacted documents] before . . . ?"). This argument ignores deductions' central role in this case, including their role in the government's new defense. It also ignores how the government should not have expected redacted documents, as explained *supra*.

Plaintiffs discuss in an entirely speculative fashion the presence of sensitive information in documents subject to production. For example, Plaintiffs assert that transaction information "would expose such private and delicate . . . matters as private medical issues . . . , *perhaps* related to very sensitive and intimate health matters." Pl. Mot. at 5 (emphasis added). Although Plaintiffs may avoid revealing sensitive information in their motion, Plaintiffs need to provide *some* concrete explanation and details about "how the information contained in [their] response . . . would cause embarrassment." *Forest Prods. Nw.*, 453 F.3d at 1361. Hypotheticals that can apply to any individuals in any case do not amount to good cause sufficient to support the issuance of a protective order. The Court therefore declines to grant Plaintiffs' motion on the basis of the potential disclosure of sensitive health information. If Plaintiffs wish to redact such information, they may file a motion for *in camera* review of specific documents. *Cf. United States v. Carriles*, 654 F. Supp. 2d 557, 568 (W.D. Tex. 2009) (discussing the "clearly established" use of protective orders to prevent medical information's disclosure (citing *Bittaker v. Woodford*, 331 F.3d 715, 726 (9th Cir. 2003))); *Broyles v. Gould*, 2016 WL 4719885, at *2 (D. Alaska Feb. 19, 2016) ("[T]he Court finds an *in camera* review of the documents to be an appropriate method to proceed in balancing the Defendants' privacy concerns with the broad discovery directive of Rule 26.").[7]

Plaintiffs' arguments about the effort of document production are similarly unavailing. Plaintiffs fret about "[d]igging through, literally, thousands of pages of documentation that the Halls have stored in a not easily accessible or organized format." Pl. Mot at 5.[8] Despite Plaintiffs' assertions that the government's request would have Plaintiffs "re-produce" information, Pl. Rep. at 5, the parties filings show the government at no point received the unredacted statements. Production of the unredacted statements would therefore not be cumulative or redundant. Plaintiffs' argument that they need to

---

[7] *See also Victor v. Lawler*, 2010 WL 1224228, at *1 (M.D. Pa. Mar. 23, 2010) ("[W]e ordered the Defendants to . . . provide the Court with complete sets of the redacted[] and unredacted reports, for our *in camera* review so we could . . . protect[] important interests in personal privacy[.]"); *Helriggle v. Petitt*, 2005 WL 8162440, at *1 (S.D. Ohio May 6, 2005) (permitting an *in camera* review of a motion for an FRCP 26(c) protective order).

[8] *See also* Pl. Rep. at 4 ("To have to go back and unredact and re-compile that entire volume of documentation will take an incredible amount of time and effort, multiple days['] worth . . . . Plaintiffs are sorry if the Government thinks that every citizen out there has hundreds of GS-9 clerks and administrative staff support elements, entire divisions, to organize and store their records for them like the Government has. But they are mistaken."). As noted *supra*, a motion for a protective order requires facts and substance — not just attorney argument. *Lantiq Deutschland GMBH v. Ralink Tech. Corp.*, 2011 WL 13394713, at *2 (N.D. Cal. Sept. 15, 2011) ("[Defendant] made no evidentiary showing of undue burden and only presents attorney argument. Attorney argument, however, is insufficient to substantiate a claim of undue burden."); *ART+COM Innovationpool GmbH v. Google Inc.*, 2016 WL 10028722, at *5 (D. Del. Aug. 10, 2016) (concluding that "bare attorney argument is simply insufficient" to justify redactions of otherwise public filings).

find statements among other documents would apply to any request for documents in Plaintiffs' possession, so that argument does not show a particular good cause for a protective order. To the extent Plaintiffs also argue that the un-redaction process would be unduly time-consuming, *see, e.g.*, Pl. Rep. at 4, Plaintiffs do not explain how many account statements they expect they would need to process or why removal of redactions is so grueling. Indeed, Plaintiffs do not explain what an un-redaction process is; they should be able to just download, print, or copy the unredacted statements. If Plaintiffs have redacted original versions of such account statements, and no longer have unredacted versions, that may present a yet more serious issue. *See, e.g.*, RCFC 37(e) (addressing when "a party failed to take reasonable steps to preserve" ESI and it cannot be restored or replaced). Plaintiffs in any event provide no specific *substantiated* estimates of cost — in terms of either time or expense — for them to comply with the government's discovery requests. This, again, fails to show good cause for a protective order.

With respect to RCFC 26(b)(2)(B) and ESI discovery, Plaintiffs' only argument that is potentially related to ESI is that gathering the requested documents would be unduly labor intensive. *See* Pl. Mot. at 5 (challenging the utility of "[d]igging through, literally, thousands of pages of documentation that the Halls have stored in a not easily accessible or organized format"); *id.* at 6 ("This request . . . requires [Plaintiffs] to 'redo' another intricate page-by-page review of those thousands of documents[.]"). This is the same general argument Plaintiffs advance in support of their motion for a protective order. Plaintiffs provide no specific description, however, of an ESI discovery process or its costs. Plaintiffs thus do not substantiate that any such efforts would be disproportionate to the amounts at issue in this case.

For the same reasons Plaintiffs do not demonstrate good cause for a protective order, they also fail to show the Court must limit discovery pursuant to RCFC 26(b)(2)(C).

\* \* \*

As a final matter, the Court denies Plaintiffs' request that the Court sanction the government for disclosing information related to settlement discussions. Pl. Rep. at 1 & nn.1–2. Whereas Plaintiffs filed a redacted letter between the parties as an exhibit to its motion, ECF No. 26-2 at 5, Defendants filed one page of the same letter as an attachment to their response without the redaction, ECF No. 27-1 at 3. The unredacted text includes a short discussion about revocable trusts. ECF No. 27-1 at 3. Defendants cite the unredacted page to support how "Plaintiffs hold their real estate in a variety of trusts and other vehicles for holding assets." Def. Resp. at 7. Plaintiffs contend that, "[a]s a result of this irretrievable breach of confidentiality and potential prejudice, it seems only fair that Defendant be subject to . . . sanctions." *Id.* at 1 n.2.

Plaintiffs do not cite a legal basis for a finding that Defendants' disclosure prejudiced them. If the Court generously assumes Plaintiffs mean to refer to the Federal

11

Rules of Evidence ("FRE") regarding settlement discussions, *see* FRE 408, Plaintiffs' argument is unpersuasive.[9]  The FRE forbid courts from admitting into evidence "conduct or a statement made during compromise negotiations about the claim" for the purpose of "prov[ing] or disprov[ing] the validity or around of a disputed claim or to impeach."  FRE 408(a); *see* FRE 408(b) ("The court may admit this evidence for another purpose[.]").  If the government attempts to use the unredacted letter to challenge the validity or amount of Plaintiffs' tax refund claim — which it has not yet done — then that evidence likely will be inadmissible.  But courts do not sanction every attorney who offers inadmissible evidence during a trial, let alone attorneys who submit documents to the Court as part of a discovery dispute.  In the present context, the government provided the unredacted letter only to address a motion for a protective order, and not to prove or disprove any fact related to the merits of Plaintiffs' claims.  The government's action does not run afoul of the FRE prohibition, and sanctions would be improper.

## IV.  CONCLUSION

For the reasons explained above, the Court **DENIES** Plaintiffs' motion for a protective order.  Plaintiffs have not demonstrated that the government's request for financial account statements imposes an undue burden or expense, is otherwise disproportionate, or provides Plaintiffs with good cause for a protective order.  The Court further **DENIES** Plaintiffs' request for sanctions against the government.

Pursuant to RCFC 26(c)(2) and RCFC 34, the Court **ORDERS** Plaintiffs to produce the requested financial account statements.  Plaintiffs must do so on or before **Monday, September 25, 2023**.  The Court recognizes Plaintiffs' concern about the publication of these financial account statements publicly on the Court's docket.  To that end and pursuant to RCFC 5.2(d), to the extent the government files Plaintiffs' unredacted financial account statements, the government shall file them under seal.

Pursuant to RCFC 26(c), the Court follows RCFC 37(a)(5) to determine the allocation of litigation expenses.  *See* RCFC 26(c)(3).  Rule 37(a)(5)(B) requires that, "[i]f the motion is denied, the court . . . must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees."  RCFC 37(a)(5)(B).  In that regard, the government sought reimbursement for its litigation costs in its response brief.  *See* Def. Resp. at 9 ("[D]efendant requests the fees mandated by RCFC 26(c)(3) and 37(a)(5)[.]").  But while Plaintiffs had an opportunity to specifically address that request in their reply, they

---

[9] The FRE apply to proceedings in this Court and limits parties' introduction of prejudicial information.  *See City of Wilmington v. United States*, 153 Fed. Cl. 405, 409 & n.6 (2021) (applying the FRE and citing, amongst other sources, 28 U.S.C. § 2503(b) and *Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 504 (2009)).

declined to do so. *See* Pl. Rep. (providing arguments for the protective order); *id.* at 7 (concluding the brief with a request only for a protective order and sanctions). Given that Plaintiffs failed to provide substantial justification for its motion through its opening and reply briefs, the Court **ORDERS** Plaintiffs to pay the government's reasonable expenses for opposing Plaintiffs' motion for a protective order.

Accordingly, counsel of record for the parties shall meet-and-confer to agree upon an appropriate amount to reimburse the government for its reasonable expenses and file a joint status report indicating that an agreement has been reached on or before **Friday, September 15, 2023**. If the parties cannot agree on an amount, the parties shall file a status report in which each party explains its proposed calculation.

Pursuant to Defendants' latest motion to extend the discovery schedule, the Court instructed the parties to complete fact discovery on or before November 13, 2023, and to file a joint status report ("JSR") within thirty days of the close of discovery. *See* July 25, 2023, Minute Order. Defendant's response to Plaintiffs' motion requested a separate extension to the discovery schedule. Because of the Court's recent order extending the discovery schedule, the Court **DENIES** the government's request to further revise the schedule.

**IT IS SO ORDERED**.

s/Matthew H. Solomson
Matthew H. Solomson
Judge